SAMUEL GOLDWYN INCORPORATED, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

UNITED ARTISTS STUDIO INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 100768, 100786. Promulgated March 21, 1941.

*Mark Eisner, Esq.,* for the petitioners.
*W. Frank Gibbs, Esq.,* for the respondent.

OPINION.

Leech: In this proceeding the petitioner, Samuel Goldwyn Inc., Ltd., admits transferee liability in respect of any deficiency that may be determined against the petitioner, United Artists Studio Inc. The word "petitioner" as hereinafter used refers to the latter. Respondent has determined a deficiency of $4,055.82 in petitioner's personal holding company surtax for the fiscal year ended June 30, 1936, and a penalty of $1,013.96. The issues are whether petitioner is entitled to deduct $16,600 from its adjusted net income as an amount used to retire indebtedness incurred prior to January 1, 1934, under section 351 (b) (2) (B) of the Revenue Act of 1934, and whether petitioner is liable for the penalty imposed under section 406 of the Revenue Act of 1935 for failure to file its return within the time prescribed by law.

The cases, duly consolidated, were submitted on a lengthy stipulation of facts which is hereby adopted as our findings of fact. Only such facts as are necessary to a decision will be referred to herein.

In December of 1933, Twentieth Century Pictures, Inc. (hereinafter referred to as Century) and Samuel Goldwyn became interested in buying all the stock of the United Artists Studio Corporation, Ltd. (hereinafter referred to as Studio Corporation). On December 7, 1933, Century executed purchase contracts with all the stockholders of the Studio Corporation except Samuel Goldwyn, Inc. A contract with the latter as of December 7, 1933, was executed on April 27, 1934. By the terms of these contracts, the purchase price was to be paid partly in cash and partly by deferred payments represented by promissory notes maturing at various times in 1934. By another agreement dated December 7, 1933, Century and Samuel Goldwyn agreed that the purchases would be for the joint account of both, that each would pay one-half of the price, and that each would have a 50 percent interest in the stock so acquired.

At the start of the negotiations between Century and Samuel Goldwyn it was contemplated that a corporation would be formed to take over the stock of Studio Corporation and to carry out the agreements of purchase. On May 18, 1934, petitioner corporation was organized under the laws of the State of California. Its stock was issued to Century, Goldwyn, and one Giannini. By appropriate resolutions and transfers, petitioner acquired rights and title to all the stock of the Studio Corporation and became bound to pay all indebtedness incurred by Century and Goldwyn on account of the stock purchase contracts. The resolution by which petitioner became obligated on the indebtedness of Goldwyn and Century was adopted on June 15, 1934.

During the fiscal year ended June 30, 1936, petitioner received from the Studio Corporation a dividend of $16,924.25, which was the only income received by petitioner during that fiscal year. After its receipt, petitioner paid out $16,600 on the notes which it had given pursuant to its agreement to assume the indebtedness of Goldwyn and Century.

On June 29, 1934, Samuel Goldwyn sold and conveyed, with the consent of Century, to his wholly owned corporation, Samuel Goldwyn Inc., Ltd., his interests in the agreement which he had entered into with Century. On August 22, 1935, Samuel Goldwyn Inc., Ltd., acquired from Century all of the latter's stock of the Studio Corporation, and from and after that date more than 50 percent of the outstanding stock of petitioner was owned directly or indirectly by or for not more than five individuals during the taxable year ended June 30, 1936.

On February 9, 1937, all the assets of petitioner were transferred to and all of its liabilities were assumed by Samuel Goldwyn Inc., Ltd., in exchange for capital stock and petitioner was dissolved.

The officers of petitioner believed that it was not liable as a personal holding company for the reason that its stock was wholly owned by a corporation having an extensive business in the production of motion pictures. They did not consider the fact that, inasmuch as Samuel Goldwyn Inc., Ltd., had no more than five stockholders, the status of petitioner would be that of a personal holding corporation. At the same time the officers of petitioner believed that the payment of $16,600 on account of indebtedness was payment on an indebtedness of petitioner incurred prior to January 1, 1934. Predicated upon the foregoing misunderstanding as to the ownership and belief as to indebtedness, no return Form 1120–H was filed.

On April 8, 1940, petitioner filed with collector of internal revenue at Los Angeles, California, a return for a personal holding company on Form 1120–H, covering the taxable year ended June 30, 1936.

The first issue is whether petitioner is entitled to a deduction from adjusted net income for amounts used to retire indebtedness incurred prior to January 1, 1934. The applicable statute, section 351 (b) (2) (B) of the Revenue Act of 1934, reads as follows:

(2) The term "undistributed adjusted net income" means the adjusted net income minus the sum of:

\*        \*        \*        \*        \*        \*        \*

(B) Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934 \* \* \*.

The dispute between the parties in its essence is whether the indebtedness here involved was incurred prior to January 1, 1934. As we

understand it, petitioner's position is that petitioner's indebtedness was a mere continuation of indebtedness incurred by Goldwyn and Century in December of 1933 and that the deduction is hence allowable.

We think there is no merit in petitioner's contention. The concept of indebtedness is inextricably associated with a particular obligor—an obligor that here must occupy such legal status prior to a certain date. Section 351 imposes a surtax upon the undistributed adjusted net income of every personal holding company. "Undistributed adjusted net income" is defined as above set out. We think the conclusion inescapable from the statutory language that the indebtedness must have been incurred prior to January 1, 1934, by the *taxpayer*, i. e., the personal holding company. The statutory language and the use of a critical date would otherwise be devoid of meaning.

The record here is clear that this taxpayer incurred no indebtedness until June 15, 1934—indeed that it was not even in existence until May of that year. The only indebtedness incurred prior to January 1, 1934, was that of two taxable entities entirely separate from petitioner, namely, Goldwyn and Century. In *Sun Pipe Line Co.*, 42 B. T. A. 1413, we pointed out that the way to give effect to the statutory date and to effectuate the Congressional intent is to deny "credit to indebtedness which is *new* in an economic sense to the taxpayer." The present indebtedness was new in every sense of the word to this taxpayer. We think the contested deduction must therefore be disallowed. Especially is this so in view of the well-known requirement of strict compliance with statutory provisions permitting deductions. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.

The second issue is whether petitioner is subject to the penalty imposed by section 406 of the Revenue Act of 1935 for failure to file a personal holding company return within the time prescribed by law. By its terms, section 406 applies wherever the 25 percent penalty is imposed by existing law. Existing law, or section 291 of the Revenue Act of 1934, provides that if a return is filed late, the penalty must be imposed unless it is shown that the failure to file was due to reasonable cause. No explanation reasonable to us has been offered. The reasons given for late filing merely reduce themselves to a plea of ignorance of law. The record shows that petitioner waited until after the issuance of a notice of deficiencies before lodging its return. No reasonable excuse is shown for this long delay and the penalty must be imposed. Cf. *Ardbern Co., Ltd.*, 41 B. T. A. 910.

*Decisions will be entered for the respondent.*